## N. C. King et al. v. F. D. Radeke et al.

1. CONTRACTS—*A Contract Construed.*—The court states and construes the articles of copartnership of the North Kankakee Improvement Association.

2. SAME—*Claiming Under One Part, and Repudiating the Whole.*— A party can not claim under a particular clause of his contract and at the same time repudiate the contract.

**Bill to Dissolve a Partnership.**—Appeal from the Circuit Court of Kankakee County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the December term, 1897. Affirmed. Opinion filed February 28, 1898.

PADDOCK & COOPER and GRANGER & DAVIDSON, attorneys for appellants.

H. K. WHEELER, attorney for appellees.

MR. JUSTICE WRIGHT DELIVERED THE OPINION OF THE COURT.

Appellants filed their bill in equity to settle and dissolve a partnership formed by them, styled North Kankakee Improvement Association, for the purpose of buying and platting lands, and selling town lots. Several hundred acres of land had been purchased and divided into blocks and lots, a large number of which was unsold, and still owned by appellants at the time of filing the bill. For the purpose of facilitating the sale of the lots, the association entered into a contract with the David Bradley Manufacturing Company to locate its plant on a part of the lots, and thereby appellants bound themselves to pay a bonus to the manufacturing company, and to assist in the enterprise of securing such location; appellees, fifty in number, entered into the following written agreement with the association:

"Articles of agreement made and entered into this first day of February, A. D. 1895, by and between the North Kankakee Improvement Association, J. Herman Hardebeck, trustee of the said North Kankakee Improvement Associa-

tion, N. C. King, its president, Alexander Dierkes, its vice-president, and a special committee of said association, to-wit: H. C. Clarke, H. J. Legris, Anson Lowe, G. H. Meyers, and J. Herman Hardebeck, parties of the first part, and F. D. Radeke and others whose names are hereunto subscribed, parties of the second part, witnesseth:

That the parties of the first part in the name of the said North Kankakee Improvement Association, and also individually, covenant and agree that if the parties of the second part shall first make the payment and perform the covenants hereinafter mentioned on their respective parts to be made and performed, the said parties of the first part will perform the covenants on their part herein agreed by them to be done and performed.

The parties of the second part agree to and with the parties of the first part that they will pay to J. Herman Hardebeck, trustee of the North Kankakee Improvement Association, for the use of the said association, fifty thousand dollars, to be paid as follows: One-fourth March 5, 1895, one-fourth May 1, 1895, one-fourth June 1, 1895, one-fourth July 1, 1895. Providing no person signing as second party shall pay other than as follows:

The parties of the second part hereunto subscribing their names do not in this agreement promise jointly, but severally, and each of the parties of the second part promise hereby to pay only that amount, which is the quotient of the said sum of fifty thousand dollars, divided by the number of names signed hereunto as parties of the second part. Provided, however, this agreement will be of no binding force whatever on the parties of the second part, unless fifty names of responsible parties shall be hereunto subscribed as parties of the second part. And provided further that this contract is signed upon the express agreement that parties of the first part shall secure the location of the David Bradley Manufacturing Works at North Kankakee, and if said plant and works be not so secured and located, then this obligation shall be void, and all moneys paid hereunder shall be refunded by parties of the first part to parties of the second part.

Said location to be secured within the next sixty days, time to be of the essence hereof.

The parties of the first part jointly and severally agree that of all sales of lots hereinafter made by the North Kankakee Improvement Association, or any of its agents, the amount which shall be received in cash therefor, or which shall be received from time to time on the deferred payments, shall be applied to the repayment of the said sum of fifty thousand dollars and interest from the time of its payments, or any portion thereof, until the same is fully repaid to the parties of the second part. And the parties of the first part covenant and agree that the North Kankakee Improvement Association shall repay to the parties of the second part said sum of fifty thousand dollars, and shall apply to the payment of said sum of fifty thousand dollars all the moneys arising from the sale of lots in North Kankakee from the present date until such time as the said sum of fifty thousand dollars is fully paid, with the interest thereon as aforesaid.

It is further covenanted and agreed by the parties hereto that the persons who shall sign this agreement as parties of the second part, shall designate a committee of not less than one or more than three, which committee shall be designated in writing, whose duty it shall be to receive and apply the payments from time to time made by the party of the first part to the parties of the second part, and to settle and adjust all accounts with said North Kankakee Improvement Association.

And it is further agreed that as often as the third Monday in each and every month hereafter until the said sum is fully repaid, an accounting shall be made between said committee of the party of the second part and the North Kankakee Improvement Association, and said first party shall pay over all money received from sale of said lots.

And the parties of the first part agree that at all times the books, papers and accounts of the North Kankakee Improvement Association and its agents shall be open to the inspection of said committee until said sum of fifty thousand dollars, and interest, upon moneys paid hereunder aforesaid shall be fully paid.

It is further covenanted and agreed that any party hereto of the second part shall have the right at any time hereafter to liquidate the amount of his obligation under this contract, and take lots for the same in satisfaction thereof, and that this shall discharge the parties of the first part from the repayment of said proportionate share of said sum of fifty thousand dollars, which the said person's obligation shall bear to the whole sum of this obligation.

Witness our hands and seals the day and year first above written."

The bill avers appellees each paid $500 of their subscriptions and defaulted as to the residue, the theory of the bill being that by reason of such default, by the terms of the contract, the persons so in default of payment are barred of all rights or interest in the lands in question, or of the proceeds of the safe thereof, or of any right of action against appellants for such portions paid by them, and the bill prays for decree in accordance with such theory. The bill also charges the indebtedness of appellants to be about $80,000, mainly because of the bonus paid the manufacturing company, and owing to the depreciation of the value of the real estate, insolvency resulted to the association, and that appellees threaten to sue at law to recover the amount paid by them respectively upon the agreement above quoted, and further prays a cancellation of the contract.

Appellees answered the bill, and filed their cross-bills, claiming the right to have the money so paid by them under the agreement, refunded, and issues having been formed on the original and cross-bills, the cause was referred to the master, who, having reported, the court on the hearing decreed in accordance with the prayers of the cross-bills, ordered the sale of the lands, and from the proceeds thereof that appellees be paid the respective amounts advanced by them to appellants under the agreement, and also gave a personal deficiency decree against appellants, from which decree appellants appeal to this court, asking a reversal thereof.

The only question to be decided in this court is the proper

construction to be given to the agreement of the parties, that we have quoted. It is contended by appellants that the payment by appellees of the full amount of one thousand dollars subscribed by them respectively, under the terms of the contract, is a condition precedent to the right to claim repayment of all, or any part of the money so advanced by them, and in support of this contention, counsel insist upon that clause of the agreement which provides that the association agree " that if the parties of the second part shall first make the payment and perform the covenants hereinafter mentioned on their respective parts to be made and performed, the said parties of the first part will perform the covenants on their part herein agreed by them to be done and performed." In view of the frame of the present bill we recognize no force in appellants' position. Had the bill been presented upon this clause of the agreement, with appropriate averments and proofs, showing the embarrassed or insolvent condition of the association was due to the failure of appellees to pay the full amounts of their subscriptions, we admit the argument of counsel would have much weight, and because such question does not arise for decision, no opinion is expressed concerning it. The averment of the bill is, that by reason of the depreciation in the value of real estate it was not worth as much as the indebtedness, and therefore the partnership association was insolvent, and for this reason the bill was filed to close up its affairs. Appellees were in no way responsible for such insolvent condition. It is not contended, if the subscriptions had been paid in full, appellees would not have been actual creditors for the amount of $1,000 each, with interest. The payment of the full sums due upon the contract, insolvent as the bill shows the association to have been, would tend to increase rather than diminish the liabilities.

By a fair construction of the written agreement, we think it means each of the appellees was to loan appellants $1,000. The filing of the original bill, in the circumstances it was filed, was a waiver and abandonment, by appellants, of the balance due, and the further continuance of the terms of the

agreement, and on the principle that a party can not claim under a particular clause of his contract, and at the same time repudiate it, as appellants would do if permitted to prevail, the appellees are entitled to reclaim the money already paid by them, and the decree of the Circuit Court was therefore right, and it will be affirmed.

Decree affirmed.